DAN SIEGEL, SBN 056400
EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Emails: danmsiegel@gmail.com;
emilyrose@siegelyee.com

Attorneys for Claimants
SARU JAYARAMAN, STEPHEN YOUNG,
MARTIN BOYDEN, ZACH NORRIS,
DEIRDRE SNYDER, MIKE LOUDEN,
AMY HARUYAMA, and ERIC
PETTENGILL

LOUIS A. LEONE, ESQ. (SBN: 099874)
CLAUDIA LEED, ESQ. (SBN: 122676)
SETH L. GORDON, ESQ. (SBN: 262653)
LEONE & ALBERTS
A Professional Corporation
1390 Willow Pass Road, Suite 700
Concord, CA 94520
Telephone: (925) 974-8600
Facsimile: (925) 974-8601
Emails: lleone@leonealberts.com
cleed@leonealberts.com
sgordon@leonealberts.com

ATTORNEYS FOR DEFENDANTS
OAKLAND UNIFIED SCHOOL DISTRICT,
JEFF GODOWN, DONALD PERRIER

# UNITED STATES DISTRICT COURT

## DISTRICT OF NORTHERN CALIFORNIA

| | |
|---|---|
| SARU JAYARAMAN, STEPHEN YOUNG, MARTIN BOYDEN, ZACH NORRIS, DEIRDRE SNYDER, MIKE LOUDEN, AMY HARUYAMA, and ERIC PETTENGILL,<br><br>    Claimants,<br><br>  vs.<br><br>OAKLAND UNIFIED SCHOOL DISTRICT; JEFF GODOWN, POLICE CHIEF; DONALD PERRIER, POLICE SERGEANT, and DOES 1 through 20,<br><br>    Respondents. | ) Case No. 3:20-cv-00685-VC<br>)<br>) **JOINT CASE MANAGEMENT**<br>) **CONFERENCE STATEMENT**<br>)<br>) **Date:**  April 29, 2020<br>) **Time:**  10 a.m.<br>) **Location:** Courtroom 4, 17th Floor,<br>) 450 Golden Gate Avenue, San Francisco<br>)<br>)<br>) **Hon. Vince Chhabria**<br>)<br>)<br>)<br>)<br>) |

Plaintiffs SARU JAYARAMAN, STEPHEN YOUNG, MARTIN BOYDEN, ZACH

NORRIS, DEIRDRE SNYDER, MIKE LOUDEN, AMY HARUYAMA, and ERIC

PETTENGILL and Defendants OAKLAND UNIFIED SCHOOL DISTRICT; JEFF

GODOWN, POLICE CHIEF; DONALD PERRIER, POLICE SERGEANT, and DOES 1

through 20 jointly submit this Case Management Statement pursuant to Civil L.R. 16-9(a) and Fed. R. Civ. P. 26(f).

**1.      JURISDICTION AND SERVICE:**

Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction for Claims for Relief brought under 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367. All Defendants in this matter have been served.

**2.      FACTS:**

**A.      Plaintiffs' Statement of Facts:**

Plaintiffs Saru Jayaraman, Stephen Young, Martin Boyden, Zach Norris, Deirdre Snyder, Mike Louden, Amy Haruyama, and Eric Pettengill attended an Oakland Unified School District Board of Education meeting on October 23, 2019. Oakland Unified School District arranged for officers from the Oakland School Police Department ("OSPD") to be present in force, including its Police Chief Jeff Godown and Sergeant Donald Perrier. At the meeting, several attendees participated in peaceful civil disobedience to express their disapproval of the School Board's intent to close Oakland public schools. Officers from the OSPD including Chief Godown and Sergeant Perrier responded to the peaceful demonstration by using unnecessary force, including by tackling peaceful demonstrators to affect an arrest and by indiscriminately striking members of the crowd with their batons. OSPD officers arrested Saru Jayaraman, Stephen Young, Martin Boyden, Zach Norris, Deirdre Snyder, and Mike Louden without probable cause to do so. Plaintiffs were injured by the officers' conduct, including Ms. Jayaraman, who suffered a torn anterior cruciate ligament in her knee when officers tackled her and arrested her. The Alameda County District Attorney declined to press charges against any plaintiff. The following public meeting, on November 13, 2019, the Board of Education cut the microphone on the podium so that the parents and educators could not be heard and denied them participation in the meeting.

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Defendants' Statement of Facts:**

- **Events leading up to the October 23, 2019 School Board Meeting:**

Due to budgetary constraints, the need to improve school quality across the District, and in an effort to manage issues stemming from under enrolled schools, the Oakland Unified School District developed a plan, known as the "Blueprint for Quality Schools" that included, among other things, recommendations to reduce the number of school sites in the District and improve the quality of the remaining schools.  The Board previously approved the first phase of the Blueprint (known as Cohort 1), which included expanding, merging, and closing schools.

On August 28, 2019, the second phase of the Blueprint (Cohort 2) was presented to the Board for a first reading and discussion. Cohort 2 proposed one school expansion and two school mergers. One of the proposed mergers would combine Kaiser Elementary School and Sankofa Academy and locate the combined school at the Sankofa campus. The other merger would combine Oakland SOL (School of Language) and Frick Impact Academy and would locate the combined school at the Frick campus. Some members of each of the four school communities impacted by the proposed mergers attended the meeting and spoke in opposition. In fact, members of the Kaiser community was given the opportunity to make its own presentation in opposition to the merger outside of the normal opportunity for public comment. That item lasted almost an hour.

On September 11, 2019 the School Board approved Cohort as recommended by staff, after significant public input and board discussion. Again, some members of each of the four school communities impacted by the merger attended the September 11, 2019 meeting and spoke in opposition. In fact, after the Board voted to approve Cohort 2, a number of community members temporarily disrupted the meeting by yelling at the Board. The Board stayed in their seats, allowed the community members to yell, and then continued the meeting after the community members left.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

At some point Kaiser parents, teachers and others formed a group, known as Oakland Not for Sale, ("ONF") to protest the merger.  The plaintiffs are members of the ONF. Those members of the Sankofa, Oakland SOL, and Frick school communities that opposed Cohort 2 accepted that the decision had been made and did not create groups to protest.

At the September 25, 2019 school board meeting,[1] the meeting after the decision to merge Kaiser and Sankofa was made, members of the ONF disrupted the board meeting and forced the meeting to be cancelled even though the issue of the Kaiser-Sankofa merged was not on the meeting agenda.   ONF protestors went up on to the stage where board members and staff sit and occupied the board members' seats. Plaintiff Jayaraman was particularly aggressive, came up on the stage and got up into the face of a staff member.  The protesters refused to comply with OUSD PD officers orders to get out of the seats and step down off the stage.  Several ONF protestors attempted to confront school board members when the board members retreated upstairs to a secured conference room.  OUSD PD officers intervened and ordered the protestors to go back down the stairs or they would be arrested.  In addition, when officers escorted board members and the superintendent to their cars following the meeting, protestors banged on the board members' cars, in an attempt to intimidate and keep board members from leaving.  The protestors were also overheard to state that they intended to stage further protests at the next meeting, bring sleeping bags and refuse to leave until their demands were met.   The OUSD PD officers did not arrest the protestors although a number of protestors stated their intent to be arrested.

At the October 10, 2019 school board meeting the ONF protests escalated.  OUSD PD deployed 9 sworn officers and 17 security officers and formed a skirmish line in front of the stage to protect board members, the superintendent, and staff.  Once again, ONF protestors disrupted the meeting, and forced board members and staff to relocate to a

---

[1] OUSD School Board meetings are held at the Escuelita School facility in the Great Room, a large room that is a gymnasium and has a stage for events.

room upstairs.  The meeting was then broadcasted from a room upstairs. The ONF protestors occupied the stage, disconnected the podium microphone and made so much noise that it was not possible for members of the public to participate in the meeting.

Prior to the board members, the superintendent and staff leaving the stage, ONF protestors walked up to the skirmish line and positioned children in chairs directly in front of the police officers and security officers. The protestors were verbally hostile to the police officers and security officers who remained downstairs in the Great Room. Officers had to secure the entire upstairs area because protestors attempted to enter the upstairs area through an exterior double door.  ONF protestors also went outside the building and attempted to disrupt the meeting by yelling up to the windows of the room where the board had retreated.  Inside the Great Room protestors used their own public address system they had brought into the building to conduct their own meeting. The protestors made it clear that they intended to disrupt all future board meetings until the end of the year, would bring media to cover the next board meeting and hoped to be arrested.

On October 21, 2019 the ONF protestors disrupted a joint meeting between members of the Oakland City Council and members of the School Board and forced the cancelation of the meeting.

- **The October 23, 2019 School Board Meeting:**

In reaction to the escalation of the ONF protests and in anticipation of the October 23, 2019 board meeting, the OUSD PD developed a plan to protect the school board members, superintendents, and staff.  The department purchased 10 six feet long interlocking barricades and covered the barricades with green cloth. The barricades were set in front of the stage to separate the speaker podium and the public area of the meeting from the stage. The speaker podium was placed on the Board side of the barricades but the mic was positioned such that public speaks would continue to make public comment. The intent was to make it more difficult for protests to unplug the mic on the speaker podium or otherwise prevent public comment.

The Great Room contains a basketball court with a boundary marked by a large black line approximately two and ½ feet wide. A section of this line runs parallel to the stage and functions as an informal boundary separating the audience from the stage. The barricades were set up in front of this boundary line.

The department deployed 10 OUSD PD officers and 19 security officers. Several police officers and security officers were deployed in a skirmish line to act as a buffer between the protestors and the board members and staff. Other officers stood off to the side of the stage and would be deployed as needed.

Soon after the meeting began, one of the ONF members took the podium and began to present ONF's demands as a large group of protestors swiftly walked up to the barricade line. The crowd of about 150 individuals grew increasingly boisterous. The speaker declared that ONF would continue to disrupt the meetings until the ONF's demands were met.  Immediately after the speaker ended her speech, several ONF protestors began jumped over the barricades and attempted to storm the stage.  As the protestors began to breach the barrier, the school board members, superintendent and staff, left the stage area to a position of safety in the upstairs conference room. During the melee, ONF jumped over the barricades, pulled down the barricades on to the floor and attempted to go up on the stage and in some cases went up on the stage.  Police and security officers used reasonable force to protect the staff, superintendent, and board members, one of whom was almost nine months pregnant. Several individuals were arrested, cited and released at the scene.

The first to jump over the barricades was plaintiff, Zachary Norris. Norris was taken into custody without incident.  Norris was charged with violation of Penal Code sections 415.5 (A) (2), 404.6 (A), and 403, cited and released at the scene.

Plaintiff Saru Jarayaman also jumped over the barricades, tried to make her way up to the stage and then briefly struggled with officers who took her into custody. Jarayaman complained of pain in her knee, was examined at the scene by a paramedic, taken to Kaiser and released.  Defendants deny that they caused any injury to

Jayaraman. When Jayaraman was searched at the scene, officers found that she had a set of steel handcuffs in her pocket. Jayaraman was charged with violation of Penal Code sections 243 (B), 403, 405, 415.5 (A) (2) and 664.

Plaintiff Stephen Young attempted to jump over the barricades immediately after Norris jumped the barricade line but was initially pushed back by one of the officers. Young went over or around the barricade line and up to the stage. He refused to comply with orders to get off the stage.  Young was handcuffed and taken into custody without further incident.  When officers searched Young they found a pair of steel handcuffs in a pants pocket.  He was arrested for violation of Penal Code section 425.5 (A)(2); Penal Code section 403, cited and released at the scene.

Plaintiff Martin Boyden also breached the barricade line and was taken into custody without incident.  Officers also found that Boyden had a pair of steel handcuffs in his pocket. Boyden was charged with violation of Penal Code sections 415.5 (A)(2) and 403, cited and released at the scene.

Plaintiff Deirdre Snyder crossed over the downed barricades and attempted to get up on to the stage. Defendants deny that Ms. Snyder was "dragged across" the barricade line as she claims.  Snyder was taken into custody without incident, charged with violation of Penal Code sections 415.5 (A)(2) and 403, cited and released at the scene.

 Plaintiff Amy Haruyama walked over the downed barricades in an attempt to get up on the stage.  Sergeant Perrier encountered Haruyama and forced her backwards by using a horizontal baton thrust that struck Haruyama's upper arm. She lost her balance and fell backwards.  A few minutes later, Harayuma walked around the barricade line and got up on the stage. Harayuma was not arrested.

Plaintiff Michael Louden, attempted to cross over a downed barricade to get up on the stage. Officers ordered him back. Louden's foot got caught in between the rungs of a downed barricade.  Louden struggled with the officers who forced him back. Officers extricated Louden from the barricade and took him into custody.   Louden was charged with violation of Penal Code sections 415.5 (A)(2) and 403, cited and released at

1    the scene.  Defendants used reasonable force to take Louden into custody.  Louden

2    complained of leg pain but did not seek medical care at the scene.

3         Plaintiff Eric Pettengill attempted to interfere with officers as they were engaged

4    with Louden.  Pettengill grabbed the section of barricade that Louden's foot was caught

5    in. Chief Godown quickly moved in and pushed Pettingill away from the barricade

6    forcing him to drop the barricade. Pettengill remained on his feet. During the

7    confrontation with Louden, Pettengill verbally confronted Chief Godown.  Once Louden

8    was extracted from the barricade, Chief Godown let go of the barricade while Pettengill

9    still held on to an end of the barricade section.  The barricade section then fell to the

10   floor and Chief Godown turned to walk away. Defendants deny that Chief Godown

11   dropped the barricade section on Pettengill's foot. Pettengill took the barricade section

12   and walked away with it. Chief Godown retrieved the barricade and placed it back on the

13   line while Pettengill engaged him verbally. Pettengill was not arrested.

14        The Alameda County District Attorney's office declined to prosecute the

15   plaintiffs.

16   • **The November 13, 2019 School Board Meeting**

17        Plaintiffs claim that during the November 13, 2019 board meeting, the board cut

18   the microphone at the public comment podium to prevent people from protesting the

19   Board's plan to close schools. However, the Board did not cut the microphone feed.

20   Once again protestors disrupted the meeting. When the board members retreated

21   upstairs, it was not clear if the video and audio was getting downstairs to the Great

22   Room. The TV crew went downstairs to investigate and it appeared that the feed had

23   been disconnected by someone in the audience. The TV crew reconnected the feed.

24        The ONF protestors disrupted the meeting as soon as it began.  They took over

25   the public podium, speaking out of turn, chanting and yelling. "No school closures;

26   Oakland is not for sale."  The Board President attempted to regain control of the

27   situation but soon the board and staff retreated upstairs and the ONF protestors went

28

up to the stage. Board members and staff went upstairs to the conference room upstairs where the meeting was streamed to the Great Room.

No arrests were made at the November 13, 2019 meeting.

**3.   LEGAL ISSUES:**

**Plaintiffs' Statement:**

- Whether defendants used excessive force against plaintiffs;
- Whether defendants' actions were substantially motivated by plaintiffs' speech;
- Whether defendants Godown and Perrier failed to intervene and stop their officers from using unlawful and excessive force;
- Whether defendants interfered by threats, coercion or intimidation with plaintiffs' constitutional and/or statutory rights;
- Whether defendants arrested plaintiffs without a warrant or probable cause;
- Whether defendants battered plaintiffs;
- Whether defendants breached a duty to refrain from using excessive force against plaintiffs.

**Defendants' Statement:**

- Whether the OUSD PD used objectively reasonable force to protect the school board members and staff and as such there is no basis for the section 1983 excess force claims, state battery, negligence claims and Bane Act claims;
- Whether Chief Godown and Sergeant Perrier are entitled to qualified immunity;
- Whether there is a basis to proceed as against Chief Godown and Sergeant Perrier on a theory that they failed to intervene with other officers;
- Whether plaintiffs failure to allege any facts to the effect that Chief Godown used force except as to Pettengill is fatal to the other broadly pled use of force claims made against Chief Godown;
- Whether plaintiffs failure to allege any facts to the effect that Sergeant Perrier used force except as to Harayuma is fatal to the other broadly pled use of force claims made against Sergeant Perrier;

- Whether plaintiffs' supervisor liability claims  against Chief Godown and Sergeant Perrier are not viable;

- Whether the plaintiffs were arrested with probable cause;

- Whether the plaintiffs First Amendment retaliation claims are viable.

**4.   MOTIONS:**

Defendants filed a motion to dismiss plaintiffs' complaint on March 27, 2020. (ECF No. 21.) Plaintiffs filed an amended complaint, and the Court vacated the motion as moot. Defendants anticipate filing a motion to dismiss plaintiffs' First Amended Complaint on grounds that the First Amended Complaint fails to allege facts sufficient to sustain supervisor liability claims against Chief Godown and Sergeant Perrier In addition, defendants will renew their Motion to Dismiss on grounds that the First Amended Complaint because there are no allegations that Chief Godown or Sergeant Perrier did anything to any of the other plaintiffs. In other words, none of the plaintiffs (other than Pettengill) have pleaded facts sufficient to state a claim against Chief Godown and none of the plaintiffs (other than Haruyama) have pleaded facts sufficient to state a claim against Sergeant Perrier. Defendants anticipate filing a motion for summary judgment. Plaintiffs will oppose defendants' motion. Further, during the course of this action, the parties anticipate filing motions *in limine*, and reserve the right to file discovery, dispositive, or other motions at their discretion, and to the extent permitted under the operative Federal and Local Rules.

**5.   AMENDMENT OF PLEADINGS:**

Plaintiffs anticipate amending the complaint to include the true names of the DOE defendants. The parties agree to request the final date to amend pleadings be set out three months from the date of the case management conference.

**6.   EVIDENCE PRESERVATION:**

The parties agree to refrain from any document destruction and to cease any document destruction program of any electronic or hard-copy materials. The parties do not anticipate that this matter will require the extensive exchange of Electronically Stored Information ("ESI"). However, the parties agree to work in good faith to collect

and exchange any necessary ESI. If issues with ESI arise, the parties will advise the Court.

**7.   DISCLOSURES:**

The parties exchanged initial disclosures on April 15, 2020. Defendants have expressed concern that plaintiffs' Rule 26 Disclosures are deficient on grounds that the plaintiffs failed to describe the nature of the disclosed witnesses' testimony.  The parties are currently meeting and conferring on this issue.

**8.   DISCOVERY:**

Pursuant to Federal Rules of Civil Procedure, Rule 26(f), the parties conferred and jointly propose to the Court the following discovery plan:

(A)   Plaintiff expects to propound discovery on subjects including:

    (1)   The subject incident;

    (2)   Identities of OUSD police officers involved in the incident;

    (3)   Policies and procedures of OUSD police department;

    (4)   Personnel files of OUSD officers; and

    (5)   Other topics that may arise in the litigation.

(B)   Defendants expect to propound discovery on subjects including:

    (1)   Relevant events leading up to the October 23, 2019 meeting;

    (2)   The October 23, 2019 meeting;

    (3)   The November 13, 2019 meeting

    (4)   Any video and audio footage on the incident in the care, custody or control of the plaintiffs;

    (5)   Any records regarding plaintiffs claimed damages including medical records and records pertaining to lost income;

    (6)   Information regarding plaintiffs' First Amended Retaliation Claims;

    (7)   Discovery to defend plaintiffs' Supervisor Liability claims if such claims remain in the case following defendants' motion to dismiss.

(C)   The parties anticipate the necessity of conducting the depositions of the plaintiffs, Chief Godown, Sergeant Perrier, OUSD PD and security officers, other

witnesses including responding EMT's and paramedics, medical care providers, and employees and agents of the Oakland Unified School District.

(D)     The parties will disclose and produce, pending discovery, electronically-stored information (ESI) including email messages, text messages and video and audio recordings. The parties agree that ESI will be provided in a form that includes all data and is reasonably accessible using common software programs.

(E)     The parties do not anticipate any orders pursuant to Rule 16(b) and Rule 16(c).

(F)     The parties request the following changes to the limitations on discovery imposed by Rule 26 and local rules:

(1)     A limit of 25 interrogatories served by defendants collectively upon each plaintiff, and a limit of 25 interrogatories served by plaintiffs collectively upon each individual and entity defendant; such that no single plaintiff or single defendant will be required to respond to more than 25 interrogatories.

(2)     The parties have conferred regarding an expansion on the number of depositions limited by Fed. R. Civ. P. 30. The parties agree that each side will likely require more than ten depositions per side. Because of the unique nature of the matter, defendants request an order allowing them to take 32 depositions, contemplating eight plaintiff depositions and the depositions of approximately three witnesses per plaintiff. The Defendants appreciate that it is important to limit the number of depositions. However, here 15 depositions proposed by the plaintiffs is not sufficient for the defendants to conduct adequate discovery.  Plaintiffs have identified a total of 63 witnesses in their Initial Rule 26 Disclosures.  Of these 63 witnesses, only 14 are affiliated with the District.  As such, this leaves 49 non- expert lay witnesses to be deposed just based on the Plaintiffs' Initial Rule 26 Disclosures.  In addition, the plaintiffs have not included the 3 paramedics and EMT's who responded to the scene or any of the plaintiffs' medical care providers.  Defendants also point out that with the exception of the plaintiffs' deposition, it is anticipated that the witness depositions with

*Jayaraman v. OUSD*, No. 3:20-cv-00685-VC
Joint Case Management Conference Statement- 12

1   be relatively brief and as such will not impose a burden on the parties. Plaintiffs do not

2   believe that judicial economy is served by an agreement to 32 depositions per side and

3   propose a more modest limit of 15 depositions per side with an agreement to meet and

4   confer to request an extension to the limit should additional depositions be required.

5   Although the parties have diligently met and conferred about the issue of how many

6   depositions to take, they have not been able to agree to an approach.

7           (3)     Defendants intend to subpoena plaintiffs' medical records relevant

8   to the incident from medical providers who treated plaintiffs for incident-related

9   injuries and conditions. Plaintiffs have expressed concerns that private, non-relevant

10  information may be contained in the records that are returned pursuant to the

11  subpoenas. The parties have met and conferred and come to a resolution that meets the

12  needs of both parties. Defendants' counsel will subpoena plaintiffs' healthcare records

13  relevant to the incident from medical providers who treated plaintiffs for incident-

14  related injuries and conditions and plaintiffs' counsel will request copies of all records

15  produced. Once returned, counsel for defendants will not disclose the records to anyone,

16  including the defendants, until counsel for the plaintiffs has reviewed the records.

17  Counsel for the defendants is permitted to share the medical records with the OUSD

18  General Counsel prior to plaintiffs objecting to the medical records. Counsel for

19  plaintiffs will have 14 days from their receipt of the records to review the records and

20  make objections to the relevance of any records. Once an objection is made, the parties

21  will meet and confer to determine whether they can agree that the records are not

22  relevant and should not be in the possession of defendants' counsel, or whether there is

23  a dispute that needs to be resolved by the Court. If the parties agree that the records or

24  some portions of the records are not relevant, defendants' counsel will return to

25  plaintiffs' counsel or otherwise destroy any copy of the objected to record. All healthcare

26  records received in response to a subpoena will be treated as confidential pursuant to

27  the stipulated protective order, (ECF No. 23). As plaintiffs have not alleged anything

28  beyond garden variety emotional distress, they have not put their mental health care

---

records at issue and defendants will not subpoena records associated with plaintiffs' mental health care. This agreement does not otherwise limit plaintiffs' ability to object to defendants' subpoenas for healthcare records based on the grounds permitted by law.

    (G)    The parties do not request any other orders.

**9.**    **CLASS ACTIONS:**

    This is a not a proposed class action.

**10.**    **RELATED CASES:**

    This case is not related to any other case.

**11.**    **RELIEF:**

    Plaintiffs seek monetary and injunctive relief and attorney's fees.

**12.**    **SETTLEMENT AND ADR:**

    The parties have met and conferred and agree that a settlement conference with a magistrate judge would be most suitable for this matter. The parties respectfully request that the Court refer the case to Magistrate Judge Laurel Beeler, Magistrate Judge Jacqueline Scott Corley, or Magistrate Judge Sallie Kim.

**13.**    **CONSENT TO A MAGISTRATE JUDGE**

    Defendants do not consent to a magistrate judge.

**14.**    **OTHER REFERENCES:**

    The parties do not believe the case is suitable for reference to binding arbitration, special master, or the Judicial Panel on Multi-District Litigation.

**15.**    **NARROWING OF ISSUES:**

    The parties do not believe that the issues can be narrowed at this time.

**16.**    **EXPEDITED TRIAL PROCEDURE:**

    The parties do not believe this case can be handled on an expedited basis.

**17.**    **SCHEDULING:**

    In view of the challenges to conducting discovery posed by the Covid 19 pandemic, the parties propose the following schedule:

| | |
|---|---|
| Fact Discovery Cut-off: | March 31, 2021 |
| Designation of Expert Witnesses: | June 30, 2021 |
| Expert Discovery Cut-off: | July 30, 2021 |

| | |
|---|---|
| Last Day to File Dispositive Motions: | April 30, 2021 |
| Pretrial Conference: | September 27, 2021, 1:30 p.m. |
| Trial: | October 11, 2021 |

**18.   TRIAL**

Plaintiffs request a jury trial.  The parties believe a jury trial will last 7 to 10 days.

**19.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiffs have filed a Certificate of Interested Parties pursuant to Civil Local Rule 3-15 attesting that they know of no interested parties in this matter. Defendants...

**20.   PROFESSIONAL CONDUCT**

Counsel for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

1

**21.    SUCH OTHER MATTERS AS MAY FACILITATE JUST, SPEEDY, AND**
**INEXPENSIVE RESOLUTION**

2

3

None at this time.

4

5

Dated: April 22, 2020

6                                                  SIEGEL, YEE, BRUNNER & MEHTA

7

8                                                  By___/s/EmilyRose Johns_____
                                                       EmilyRose Johns

9                                                  Attorneys for Plaintiffs
                                                   SARU JAYARAMAN, STEPHEN YOUNG,
10                                                 MARTIN BOYDEN, ZACH NORRIS,
                                                   DEIRDRE SNYDER, MIKE LOUDEN,
11                                                 AMY HARUYAMA, and ERIC PETTENGILL

12

13   Dated: April 22, 2020

14                                                 LEONE & ALBERTS

15

16                                                 By___/s/Claudia Leed_____
                                                       Claudia Leed

17                                                 Attorneys for Defendants
                                                   OAKLAND UNIFIED SCHOOL DISTRICT,
18                                                 JEFF GODOWN, and DONALD PERRIER

19

20

21

22

23

24

25

26

27

28

---